471 So.2d 1049 (1985)
STATE of Louisiana
v.
Leroy GREEN.
No. 85 KA 0140.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
*1050 Bryan Bush, Dist. Atty. by Louis Daniel, Asst. Dist. Atty., Baton Rouge, for plaintiff appellee.
Bonnie Jackson, Public Defenders' Office, Baton Rouge, for defendant appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
*1051 SHORTESS, Judge.
Leroy Green (defendant) was charged by bill of information with the armed robbery (a violation of LSA-R.S. 14:64) of Highland Pharmacy in Baton Rouge, Louisiana, on April 2, 1984. Defendant pled not guilty. He filed a motion to suppress an out-of-court identification which was denied. A jury convicted defendant as charged, and he was sentenced to forty (40) years at hard labor without benefit of parole, probation, or suspension of sentence. He has appealed, alleging two assignments of error:
1. The trial court erred when it denied defendant's motion to suppress identification.
2. The trial court erred when it failed to follow the mandatory sentencing guidelines in LSA-C.Cr.P. art. 894.1 and imposed an excessive sentence.

FACTS
At approximately 4:30 p.m. on April 2, 1984, Robert R. Price, owner of Highland Pharmacy, was conversing with a customer at the sales counter in his store when defendant entered. After the customer left, defendant asked Price for a baby laxative. Price got a laxative from the front of the store while defendant remained at the sales counter. When he returned, defendant pointed a .38 caliber blue steel revolver at him. Defendant told Price he wanted his class A narcotics.[1] Defendant followed him into the prescription department and instructed Price to place a quantity[2] of narcotics in a paper bag. Defendant then ordered Price back to the cash register and took $173.33 from the cash drawer. Finally, defendant forced Price into a storeroom at the rear of the store, shut the door and told him not to come out. Unknown to defendant, there was a door in the rear of the storeroom that led to an adjacent insurance company office. Price exited the storeroom and ran to a window in the front of the insurance office where he was able to observe the license number of the vehicle. A check of the license number revealed that the vehicle was registered to defendant. Price identified defendant from a photographic line-up on April 6, 1984, and defendant was arrested on April 15, 1984. When arrested, a Colt .38 caliber blue steel revolver loaded with hollow point bullets was found next to his bed.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in denying his motion to suppress the photographic lineup identification, arguing it was unduly suggestive.
At approximately 8:00 on the evening of the robbery, Price was shown a photographic lineup by Officer Steve Woodring of the Baton Rouge Police Department. It consisted of six pictures of black males. Only frontal views were exhibited, and he was unable to make an identification.
Four days later, Officer Greg Phares presented a second photographic lineup to the victim. This lineup contained frontal and profile views of five subjects. Price quickly identified defendant's photograph.
Defendant's picture appeared in both the first and second lineups. Only the second lineup was available at trial and it is unclear if defendant's photograph was the only one that appeared in both lineups.[3]
Defendant contends he was the only person included in both the first and second arrays, rendering the lineup suggestive and *1052 therefore illegal. For purposes of this assignment of error, we will assume defendant's contention is true.
Price testified that the individual who robbed him had nothing covering his face and was not wearing a hat. He had ample opportunity to view defendant during the three to four minute duration of the robbery, and testified that he would have had no problem identifying defendant in the first array if that array had contained profiles. In the first array, defendant's hair was in braids. Price's description of the robber was that of a well-groomed man with ¾-inch hair and a moustache.
Several factors must be considered in determining the constitutionality of an out-of-court identification. First, an evaluation must be made of the suggestiveness of the identification procedure. State v. Guillot, 353 So.2d 1005 (La.1977) writ denied, 367 So.2d 864 (La.1979). If a witness' attention is focused on defendant during the lineup, the identification procedure is unduly suggestive. State v. Robinson, 386 So.2d 1374 (La.1980). In reviewing the procedure, the trial court must look at the totality of the circumstances surrounding the identification. State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983).
Even if defendant's picture was the only one repeated in the April 6 lineup, we cannot say that defendant was displayed in such a way that the victim's attention was focused on him. To the contrary, the record indicates that Officer Phares was careful not to suggest to the victim which suspect he should identify.[4]
A suggestive identification will not result in reversal of a conviction if it is demonstrated that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Factors to be considered in determining the reliability of an identification include the opportunity of the victim to view the criminal at the time of the crime, the victim's degree of attention, the accuracy of the victim's prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time elapsed between the crime and the confrontation. State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985). Furthermore, a trial judge's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981).
The record shows that Price was face-to-face with the robber at various times during the course of the robbery and testified that he wanted to get a good look at him so that he could provide the police with a description. He provided the police with a description of the perpetrator's clothing and physical appearance and picked defendant out of a photo lineup within four (4) days of the robbery after viewing the photographs for a mere thirty seconds. He testified he was positive defendant was the individual who robbed him. In view of these facts, the trial court did not commit reversible error in admitting the testimony concerning the victim's pre-trial identification of defendant.

ASSIGNMENT OF ERROR NUMBER TWO:
Defendant contends the trial court erred in failing to follow the sentencing guidelines of LSA-C.Cr.P. art. 894.1 and in imposing an excessive sentence. Specifically, defendant argues that he has a serious drug abuse problem which should have been considered as a mitigating factor at his sentencing.
The trial court need not recite the entire checklist found in LSA-C.Cr.P. art. 894.1. However, the record must reflect that the judge adequately considered the guidelines. State v. Davis, 448 So.2d 645 *1053 (La.1984). When a trial judge recites some of the 894.1 factors such as defendant's lengthy criminal record or the risk that defendant would commit other crimes, a factual basis for the sentence is present and it is not necessary for the trial judge to enumerate each factor under the article. State v. Burns, 441 So.2d 1294 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1242 (La.1984).
At the sentencing hearing, defendant's counsel asked the court for leniency, stating that in her opinion, defendant had a serious drug problem. The trial judge discussed defendant's lengthy criminal record noting that his adult offenses began when he was 17 years old. The pre-sentence investigation reveals defendant was arrested for armed robbery, burglary, auto theft, and attempted murder at age 18. He received a 40-year sentence which was commuted to 25 years after defendant had served 13 years. Within 9 months after his commutation and release from prison, defendant was again in jail charged with this armed robbery. The trial judge stated defendant had shown no desire to become a productive member of society since his release from prison. Furthermore, he noted that defendant had been charged with a similar offense in Mississippi since his release from prison. He further stated that defendant was a second offender and there was an undue risk that he would commit another crime if probation was granted; that defendant was in need of correctional treatment; and that a lesser sentence would deprecate the seriousness of the offense.
The trial judge more than adequately satisfied the statutory criteria set forth in LSA-C.Cr.P. art. 894.1.
The Louisiana Supreme Court has held that Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment and that, although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and such sentences will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Shields, 444 So.2d 287 (La.App. 1st Cir.1983), writ denied, 446 So.2d 312 (La.1984).
The authorized maximum sentence for armed robbery is imprisonment at hard labor for 99 years without benefit of parole, probation or suspension of sentence.
Because of defendant's prior adult record and because the sentence actually imposed is in the lower half of the sentencing range, we cannot say that the district court judge abused the much discretion accorded him by law. This assignment of error is without merit.
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Price testified that prior to 1974, narcotic drugs were referred to as Class A, B, or C. After 1974, the groupings were changed to Schedules I-V. Defendant demanded Dilaudid, a Schedule II narcotic. Schedule II drugs are the most severely restricted medically used narcotics. Defendant was in prison from 1970-1983 and may have been unaware of the classification revision.
[2] According to Price's testimony, the following drugs were stolen: 70 doses of Mepergan [Fortis], 50 doses of Dilaudid 4 mg., 52 doses of Tylox capsules, 42 doses of Percodan tablets, 65 doses of Ritalin 5 mg., and 55 doses of Ritalin SR 20 mg.
[3] At trial, Price was unsure of the makeup of the other lineup. Officers Phares and Woodring testified they did not know whether any of the other photographs appeared in both lineups.
[4] Two other cases in which a defendant's photograph was the only photograph repeated in a subsequent lineup are State v. Williams, 458 So.2d 1315 (La.App. 1st Cir.1984); writ denied, 463 So.2d 1317 (La.1985) and State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984). In both cases the convictions were affirmed.