489 So.2d 957 (1986)
STATE of Louisiana
v.
Thomas MEDFORD.
No. 86-KA-8.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1986.
Dorothy Pendergast, Asst. Dist. Atty., Gretna, for State.
*958 John Craft, Indigent Defender Bd., Gretna, for defendant/appellant.
Before CHEHARDY, BOWES and WICKER, JJ.
BOWES, Judge.
Thomas Medford and a co-defendant (who remained at large throughout these proceedings) were charged by grand jury indictment with first degree murder. The defendant was arraigned on November 12, 1984, and, through counsel, pled not guilty to the charge. Defendant's motion to suppress identification was heard, submitted and denied on April 23, 1985; all other motions were satisfied as of May 29, 1985.
Trial commenced June 25, 1985 with a jury of twelve, plus one alternate being impaneled. On June 28, 1985, the jury returned a verdict of guilty as charged (which, after polling, was declared legal) and, after a sentencing hearing, unanimously recommended that the defendant be sentenced to life imprisonment. The defendant's motion for a new trial was heard and denied on September 4, 1985, following which he waived all delays and was immediately sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.
It is from the above conviction and sentence that the defendant seeks relief on appeal, assigning the following as errors:
Assignment of Error No. 1
The court erred in denying appellant's Motion to Suppress Identification.
Assignment of Error No. 2
The court erred in prohibiting defense counsel from inquiring into pertinent factors affecting the witnesses' ability to perceive and identify the perpetrator during the hearing on the Motion to Suppress Identification.
Assignment of Error No. 3
The court erred in excusing for cause those potential jurors who expressed an inability to return the death penalty at the penalty phase of the trial, thereby created a guilt prone jury.
Assignment of Error No. 4
The court erred in refusing to order disclosure of the identity of the confidential informer.
Assignment of Error No. 5
The court erred in prohibiting testimony from a defense witness who had been present in the courtroom for part of the trial.
Assignment of Error No. 6
The evidence presented was not sufficient to justify the verdict of guilty of first degree murder.
On May 6, 1984, at approximately 9:15 p.m., George Plaisance, Jr., his wife, Arlynn, and his children, George, III, and Ginger, were at home in their house in Gretna. Answering the doorbell, Mr. Plaisance was confronted by two gunmen who pushed their way into the residence. One subject, later identified as Kenneth McCullough, placed a gun to Mr. Plaisance's head and pushed him into the master bedroom where Mrs. Plaisance was watching television. The second subject, later identified as Thomas Medford, held a gun to Mrs. Plaisance's head until motioned by his accomplice to "check out" the house. Leaving McCullough and Mr. Plaisance in the bedroom with Mrs. Plaisance, Medford began searching through the closets in adjoining rooms.
A neighbor, Albert Alonzo, Sr., observed the subjects approach and enter the Plaisance residence and instructed his wife to call and find out if anything was wrong. Mrs. Plaisance answered the phone and was able to convey to Mrs. Alonzo that they needed help. Mrs. Alonzo informed her that "Albert and Marty are on their way over." At that point, Medford returned to the master bedroom and forced Mrs. Plaisance to hang up the phone. Mr. Plaisance, McCullough, Mrs. Plaisance and Medford, in that order, walked out of the bedroom into the hall.
*959 Albert Alonzo, closely followed by his son, Marty, approached the Plaisance home and knocked on the door. George Plaisance, III, who had just left his bedroom and was unaware that his parents were being held at gunpoint, answered the door and, upon inquiry, informed Mr. Alonzo that all was well. Seeking to verify that information, Albert Alonzo walked to the hallway. Observing the situation, he grabbed Medford and threw him towards Marty with instructions to "break him up." Mr. Plaisance told Ginger and George, III, to hide and warned the senior Alonzo that the subjects were armed, whereupon Albert replied "I have a gun also." McCullough then shot Mr. Plaisance in the head; the bullet grazed his skull, tore off a piece of his ear, and rendered him unconscious.
As Mr. Plaisance fell to the floor, Mrs. Plaisance backed out of the hallway and Marty Alonzo continued to wrestle with Medford, pinning his arms to his side in a "bear hug." After Medford fired three shots at Marty Alonzo's legs, Albert Alonzo grabbed Medford by the hair and placed a gun to his neck, pulling the trigger twice. The gun did not fire, as it was not loaded. Medford jerked his arm free of Marty Alonzo's grasp and fired twice at Albert Alonzo, striking him in the forearm and the hip; Mr. Alonzo moaned, but managed to strike Medford twice in the head with his gun, allowing Marty Alonzo to wrestle Medford into a corner. Hearing more gunshots, the junior Alonzo looked up in time to see McCullough shoot his father in the head. McCullough then shot Marty Alonzo in the shoulder and fled the scene with Medford.
After calling the police and emergency units, Mrs. Plaisance went to her husband's aid. After a few moments, Mr. Plaisance regained consciousness and, after trying to aid Albert Alonzo, grabbed Alonzo's gun and gave chase; however, the subjects had escaped. Albert Alonzo, Sr. died as a result of the gunshot wound to his head.
Assignment of Error No. 1
The court erred in denying defendant's Motion to Suppress Identification.
Assignment of Error No. 2
The court erred in prohibiting defense counsel from inquiring into pertinent factors affecting the witnesses' ability to perceive and identify the perpetrator during the hearing on the Motion to Suppress Identification.
As these two assignments involve only one issue and were argued together by the defense, they will be addressed as one assignment of error here.
A motion to suppress photographic identification was heard on April 23, 1985. Detective Robert Mason testified that information supplied by a confidential informant indicated that the defendant was involved in the crime. Detective Mason secured a photograph of the defendant and included it in a five-photo lineup. Mrs. Plaisance and George Plaisance, III, identified the defendant from the lineup; Mr. Plaisance and Ginger Plaisance were unable to make an identification. At a separate showing, Marty Alonzo made a tentative identification.
During cross-examination of Detective Mason, defense counsel sought to learn the descriptions of the perpetrators given by the witnesses on the night of the shooting. The following colloquy occurred:
THE COURT:
What is the purThis is a motion to suppress the ID. Why does that become important?
MR. LITTLE:
Well, Judge, it of course would be relevant in essence of whether or not they were in fact even capable of making an identification if in fact somebody was in a room and never saw the perpetrators or had no opportunity to see them and then subsequently comes forth and makes an identification, I think that becomes suspect.
And the witness on the stand, I believe, because of time, is not at all clear as to where these people might or might not have been on the night of the offense. And I think it is important to show that they had access to view the individual who they subsequently *960 identified. And that's why I simply ask that he be allowed to look at the report to see where these people were at the time the crime took place.
MR. ZENO:
Your Honor, I think that would be relevant at a trial of the matter and it would be something for the jury to determine whether or not the persons who made the identification had an adequate opportunity to view the person whom they later identified.
For purposes of this motion, it is my impression that the only determination of [a] Court hearing this motion can make is whether or not the identification is tainted either by actions of the police officer or by some subsequent actions in court that may have taken place which interfered with a free and voluntary identification process.
I do not believe that it is under the authority of the Court at this point to determine whether it is a good identification in terms of how long they were able to see the suspect and etcetera, etcetera. And therefore I believe it to be irrelevant at this point for this witness to testify.
THE COURT:
Mr. Little?
MR. LITTLE:
I argued, Judge.
THE COURT:
I maintain the State's objection.
At the conclusion of the hearing, the Court denied the motion to suppress.
A defendant attempting to suppress an identification has the burden of proving that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Cotton, 471 So.2d 1017 (La.App. 1st Cir.1985). See also La.C. Cr.P. art. 703(D). The issue presented by a motion to suppress is whether or not a photographic display or lineup was suggestive. See State v. Vaughn, 378 So.2d 905, 909 (La.1979); State v. Lucky, 453 So.2d 1234 (La.App. 1st Cir.1984) writ not considered 459 So.2d 529. In Lucky, supra, our brothers of the First Circuit, with whom we agree on this issue, stated:
A defendant attempting to suppress an identification must prove (1) that the identification was "suggestive" and (2) that there was a likelihood of misidentification in the identification procedure. [citations omitted]
The defendant has the burden of proving the ground of the motion to suppress, i.e. the suggestiveness of the procedure, La.Code Crim.P. art. 703(D), and, in reviewing the procedure, the trial court must look at the totality of the circumstances surrounding the identification. [citations omitted]
A lineup [either physical or photographic] is unduly suggestive if the identification procedure displays the defendant[s] so that the witness' attention is focused on the defendant[s].
Appellant contends that the factors trial counsel sought to inquire into were highly relevant to the motion to suppress, that the defendant was prejudiced by the improper restriction of questioning by the court and by the denial of the motion to suppress without full consideration of all relevant factors as set out in Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and that the defendant's conviction should be set aside and the matter remanded for retrial following a new suppression hearing.
In determining the constitutionality of a pre-trial identification, several factors must be considered. The suggestiveness of the identification procedure must first be evaluated. State v. Guillot, 353 So.2d 1005 (La.1977); State v. Green, 471 So.2d 1049 (La.App. 1st Cir.1985). In the present case, Detective Mason presented a five-photograph lineup to the Plaisances and Marty Alonzo. He did not coerce or induce them to make an identification. He handed them the stack of photographs, with the defendant's in neither the first nor last position. The witnesses were separated when viewing the lineup, with the exception that Mrs. *961 Plaisance was in the room when George, III, viewed the photographs; however, she did not communicate with him. The photographs have no distinguishing marks and are the same size and background. We find, therefore, that the procedure used was not suggestive. See Guillot, supra; State v. Tonubbee, 420 So.2d 126 (La.1982). Appellant counsel has neither alleged nor shown that the procedure was suggestive.
Next, it must be determined whether the photographs used in the lineup displayed the defendant so singularly that the witness' attention was unduly focused on him. While a strict identity of characteristics is not required, a sufficient resemblance to reasonably test the identification is necessary. In Guillot, supra at 1008, the court noted:
This determination is made by examining articulable features of the pictures or persons used: [footnote omitted] height, weight, build; hair color, length and texture; facial hair; skin color and complexion; and the shape and size of the nose, eyes, lips, etc. In the present case, the trial judge found that out of seven photographs, only two or three could have been that of the defendant. This number should be enough to reasonably test the identification.
In the instant case, the photographs displayed evidence a sufficient similarity between the subjects depicted to reasonably test the identification. The subjects depicted are white males with full facial hair. They appear to be of the same age group and have hair of similar length. The subjects are almost deceptively similar in appearance. Appellant counsel has neither alleged nor shown that there was an insufficient similarity of characteristics between the subjects depicted in the lineup.
The transcript of the hearing on the pre-trial motion to suppress contains no indication that the defendant carried his burden of proving the suggestiveness of the out-of-court identifications. In the absence of such a showing, we find that a Manson analysis is unnecessary. See State v. Tonubbee, supra; State v. Elloie, 461 So.2d 681 (La.App. 4th Cir.1984). Under similar circumstances in State v. Daniels, 473 So.2d 873, 875 (La.App. 4th Cir. 1985), the court stated:
Daniels first contends that the Trial Court should have granted his motion to suppress the identification and would have done so had it allowed defense counsel to question Scott Wyttenbach about the lighting at the scene and about whether Best was under the influence of intoxicants at the time of the robbery matters which Daniels argues would have impugned Best's identification of Daniels.
We believe the Trial Judge properly sustained the State's objection to Wyttenbach's testimony at the suppression hearing. The only issue at a hearing on a motion to suppress an identification under La.C.Cr.P. art. 703 is the constitutionality of the procedures used by the police in procuring the identification of the defendant, that is, whether the police action suggested to the victim of a crime that the defendant should be identified as the perpetrator. However, in cases such as this one where there are no allegations that the police identification procedures were impermissibly suggestive, challenges to the victim's veracity and powers of observation do not raise constitutional issues but are matters to be considered by the jury during trial on the merits. Hence, the Trial Judge properly denied Daniel's motion to suppress evidence of the identification, and properly permitted the jury to consider the evidence at trial where defense counsel had the opportunity to cross-examine both Best and Wyttenbach concerning Best's ability to perceive the robbers.
See also State v. Wright, 410 So.2d 1092 (La.1982).
Appellant counsel contends that the Manson factors are applicable in determining the suggestiveness of an identification procedure, citing State v. Prudholm, supra and State v. Chaney, 423 So.2d 1092 (La.1982), wherein it was stated that "...
*962 [i]n Manson, the court considered these five factors in determining whether the identification was suggestive...." However, this language varies from that of Manson, wherein the court stated:
We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations. The factors to be considered are set out in [Neil v.] Biggers, 409 U.S., [188] at 199-200, 34 L.Ed.2d 401, 93 S.Ct. 375 [at 382]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Manson, supra at 97 S.Ct. at 2253.
See also Guillot, supra; State v. Davis, 409 So.2d 268 (La.1982); State v. Stucke, 419 So.2d 939 (La.1982).
Therefore, the factors trial counsel sought to inquire into were relevant only upon a showing that the identification procedures were suggestive. In the absence of such a showing, as was the case here, challenges to the witness' powers of observation do not raise constitutional issues, but are matters to be considered by the jury. State v. Daniels, supra. See also State v. Huckaby, 368 So.2d 1059 (La. 1979).
Hence, we find that the trial judge did not err in limiting trial counsel's questioning and in denying the motion to suppress. These assignments are without merit.
Assignment of Error No. 3
The court erred in excusing for cause those potential jurors who expressed an inability to return the death penalty at the penalty phase of the trial, thereby creating a guilty prone jury.
ARGUMENT
Appellant counsel argues that the exclusion of four jurors for cause in accordance with Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and C.Cr.P. art. 798(2) created a guilt-prone jury, thereby denying appellant's due process right to a fair and impartial jury.
The Louisiana Supreme Court has continually held that jurors qualified under Witherspoon, and Article 798(2) are constitutionally valid. See State v. Monroe, 397 So.2d 1258 (La.1981); State v. Kelly, 375 So.2d 1344, 1348 (La.1979).
This position was recently reaffirmed by the Court in State v. Jones, 474 So.2d 919 (La.1985):
Defendant complains that the trial court sustained challenges for cause for eight jurors who expressed opposition to the death penalty. He principally argues that the exclusion of all jurors who express scruples about the death penalty constitutes a systematic exclusion of an identifiable segment of the population and that the remaining "death-qualified" jurors are "conviction prone".
Acceptance of defendant's argument would require two juries, one (which would not be death-qualified) to determine guilt or innocence and a second jury (which would be death-qualified) to determine sentence. Such a procedure is inconsistent with codal provisions governing the trial of capital cases in Louisiana. Nevertheless, defendant cites Grisby v. Mabry, 569 F.Supp. 1273 (E.D.Ark. 1983), affirmed 758 F.2d 226 (8th Cir. 1985), in support of his claim and urges this court to rule that death-qualified juries selected under present statutes are not representative of the community.
In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the Court stated that the data in support of a claim that death-qualified jurors are conviction prone was either non-existent or "too tentative and fragmentary" to warrant such a conclusion. 391 U.S. at 517-518, 88 S.Ct. at 1774-1775. This court has consistently declined to adopt a contrary view. [citations omitted]
*963 Thus, as the law presently stands, La.C. Cr.P. art. 798(2) is constitutional and, accordingly, this assignment is also without merit.
Assignment of Error Number 4
The trial court erred in refusing to order disclosure of the identity of the confidential informer.
During the course of his investigation, Detective Mason received information from a confidential informant which ultimately led to the defendant's arrest. Trial counsel filed a motion and a memorandum in support of his motion to disclose the identity of the informant. During the course of the motion to suppress the photographic identification, defense counsel advanced his argument in favor of the revelation of the identity of the informant, stating that:
[T]his individual is not a passive party in this case, but in fact guided the police to a location where the identity of Mr. Medford was learned. And I would submit as a person who concealed information, or at least had aided or abetted one of the perpetrators in the concealment of this crime. And I think she is a party insofar as the after the fact involvement is concerned. And I would ask that her identity be told to us.
I have reason to believe that this individual is a vital source of information regarding the facts and circumstances as told to her by co-defendant Mr. McCullough. This is Mr. McCullough's girlfriend. I don't know who she is. But I think that McCullough told her about this crime, that she concealed the fact of McCullough's identity from the police for sometiem. [sic].
The trial judge refused to order the State to disclose the identity of the informant, citing State v. Humphries, 463 So.2d 804 (La.App. 2nd Cir.1985). Appellant counsel contends that the trial judge's refusal to order disclosure of the identity of the informant impaired appellant's ability to prepare a defense and constitutes reversible error.
In State v. Quetant, 466 So.2d 567 (La. App. 5th Cir.1985), a panel of this court addressed the question of when disclosure of the identity of a confidential informant is required. Judge Boutall, writing for the court, stated:
The general rule in this state is that the prosecution may withhold the identity of an informant. This privilege is founded on the strong public policy which favors protecting the identity of the informant. It is not absolute, however. A defendant bears the burden of showing exceptional circumstances warranting such disclosure. See State v. Davis, 411 So.2d 434 (La.1982).
The jurisprudence has established certain guidelines for determining when disclosure is necessary. When an informant only supplies the information and does not participate in the transaction, disclosure is not required. State v. Davis, supra, and cases cited therein. On the other hand, when the informant plays a crucial role in the transaction and the defense meets its burden of showing exceptional circumstances justifying disclosure, disclosure is required. Participation in the alleged criminal transaction is the key; if the informant does not participate, the defendant cannot compel disclosure.
See also State v. Davis, 411 So.2d 434 (La.1982); State v. Humphries, supra, State v. Quetant, supra.
In the instant case, it is clear from the testimony of the witnesses that the informant did not participate in the crime. Further, trial counsel did not allege that she participated, only that she spoke to McCullough after the crime. Therefore, we hold that disclosure of the identity of the defendant was not required. See State v. Dotson, 256 So.2d 594 and Quetant, supra.
This assignment lacks merit.
Assignment of Error Number 5
The court erred in prohibiting testimony from a defense witness who had been present in the courtroom for part of the trial.
Witnesses had been sequestered since the beginning of the trial. Nevertheless, on the third day, defense counsel attempted *964 to call the defendant's sister as a witness even though she had been present in court during the previous day's testimony. The State argued that the witness should not be permitted to testify. Defense counsel argued that the testimony he sought to elicit from the witness did not relate to any testimony previously given and, therefore, the purpose of sequestration was not violated. He contended that it only became necessary to call the defendant's sister when the State failed to call a particular witness named Wilson in the presentation of its case. According to defendant's trial counsel, the only fact to which the witness was to testify was that she saw Mr. Medford's young son about 10:00 p.m. the evening of the shooting when the boy came to her house.
The trial judge upheld the State's objection, stating:
Well you know the possibility existed, but you let her sit in the courtroom, Mr. Little ... you know, your witnesses were sequestered.... I'm going to maintain the State's position. She is a fact witness. And, accordingly, she broke the sequestration by sitting in here listening to the testimony. And accordingly, the court's going to deny you.
In State v. Warren, 437 So.2d 836 (La. 1983), the Louisiana Supreme Court promulgated an extensive discussion on sequestration:
La.C.Cr.P. art. 764 provides the rule for the sequestration of witnesses:
Upon its own motion the court may, and upon the request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
The purpose of sequestration is to assure that a witness will testify from his own knowledge of the case without being influenced by the testimony of prior witnesses, and to strengthen the role of cross-examination in developing the facts. [...]
La.C.Cr.P. art. 764 vests discretion in the trial judge to disqualify a witness when a rule of sequestration has been violated... Ordinarily, the trial judge's ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. [...] However, there are constitutional limitations on the trial judge's exercise of his discretion. When the exclusion is of a defense witness, the defendant's right to compel the attendance of witnesses and to present his defense may be impaired. La.Const. art. 1, § 16; [...] In State v. Jones, 354 So.2d 530, 532 (La.1978), this court recognized that:
Although our jurisprudence allowing trial judges to enforce sequestration pursuant to La.C.Cr.P. art. 764 by excluding testimony of disobedient witnesses does reflect a legitimate state interest in preventing testimonial influence that interest is not sufficient to override the defendant's rights to have compulsory process and to present a defense under either the federal or the state constitution.
We then followed Braswell v. Wainwright, 463 F.2d 1148 (5th Cir.1972) and held that exclusion of a witness' testimony, in the absence of a sequestration violation with the consent connivance, procurement or knowledge of the defendant or his counsel, is constitutionally impermissible. [citations omitted]
The relevancy and/or importance of the alleged testimony to be given by the witness was never explained by either trial or appellate counsel. Trial counsel admitted that he knew that defendant's sister had been present during the previous day's proceedings. Under Warren, supra, and the wide discretion given a district judge in the conduct of a trial, we find no error in the learned trial judge's ruling and no merit to this assignment.
*965 Assignment of Error Number 6
The evidence presented was not sufficient to justify the verdict of guilty of first degree murder.
Appellant counsel urges the court to review the evidence presented at trial to determine whether, as a matter of law, the evidence was sufficient to support the verdict, citing State v. Raymo, 419 So.2d 858 (La.1982) as authority for such a review. Raymo held that in a situation where the State's case was devoid of an essential element of the offense charged, a defendant's conviction and sentence must be set aside.
The defendant was charged with first degree murder under sections (1) and (3) of R.S. 14:30, which provides in pertinent part:
First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery....
. . . . .
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
There can be no doubt that a human being was killed. The victim, Albert Alonzo, Sr., died as a result of a gunshot wound to the head. As it was established at trial that Kenneth McCullough, Medford's co-perpetrator, fired the fatal shot, the question for review, then, is whether the defendant had the specific intent to kill the victim.
R.S. 14:24 provides, as follows, that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." From testimony of the State's witnesses, it is obvious that the defendant and Kenneth McCullough were partners in the armed entry into the Plaisance residence. They entered together and obviously worked as a team. Both men were brandishing pistols at the time the victim and his son entered the residence, and they fired the only shots that night. Under the facts of this case, there is no doubt that the defendant was a principal to the murder of the victim.
However, not all principals are automatically guilty of the same grade of offense. In State v. Holmes, 388 So.2d 722, 726 (La.1980), the court noted:
One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. McAllister, 366 So.2d 1340 (La.1978). Thus, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. In the case of a first degree murder conviction, the requisite mental state is that the defendant had the specific intent to kill. It is not enough to find merely that his coconspirator or accomplice had the necessary mental state, since this intent cannot be inferred to the accused. It must be shown that this accused also had the specific intent to kill.
See also State v. Tobias, 452 So.2d 157 (La.1984).
To convict the defendant of first degree murder, the State had to show that: (1) the defendant had the specific intent to kill or to inflict great bodily harm; and (2) was engaged in the perpetration or attempted perpetration of an aggravated burglary and/or (3) the defendant had the specific intent to kill or to inflict great bodily harm upon more than one person. Specific intent is that state of mind which exists when "the offender actively desired the prescribed criminal consequences to follow his act or failure to act." R.S. 14:10(1). Specific intent, being a state of mind, need not be proven as a fact; it may be inferred from the circumstances of the transaction. R.S. *966 15:445. See also State v. Kohler, 434 So.2d 1110 (La.App. 1st Cir.1983).
As noted previously, the defendant and McCullough forced their way into the Plaisance residence at gunpoint. While McCullough held Mr. and Mrs. Plaisance in the master bedroom, the defendant began searching through closets in the adjoining rooms. When Albert and Marty Alonzo arrived, Medford was holding a gun on Mrs. Plaisance. The appellant fired three shots at Marty Alonzo during the course of a struggle. Albert Alonzo, Sr., came to Marty's aid and attempted to shoot the defendant. However, the gun, being unloaded, did not fire. The defendant then jerked his arm free and shot Albert Alonzo in the hip and forearm.
Without a doubt, Medford's actions evidenced a specific intent to kill the victim or to inflict great bodily harm. Likewise, appellant's attempt to shoot Marty Alonzo demonstrates a specific intent to kill or inflict great bodily harm upon a second person. See State v. Tobias, supra; State v. Tyler, 342 So.2d 574 (La.1977) cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227. Thus we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, undoubtedly could have found that the State proved Thomas Medford's intent to kill or inflict great bodily harm upon more than one person beyond a reasonable doubt. In fact, it would be completely illogical to conclude otherwise.
This last assignment is also without merit.
Accordingly, for the reasons stated, we affirm the conviction and sentence of appellant.
AFFIRMED.