520 So.2d 1305 (1988)
STATE of Louisiana
v.
Darrell SMITH.
No. 87-KA-620.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
*1307 John M. Mamoulides, Dist. Atty., Guy Deloup, Dorothy A. Pendergast, Asst. Dist. Attys. (Louise Korns, of counsel), Gretna, for plaintiff-appellee.
Philip E. O'Neill, Gretna, for defendant-appellant.
Before KLIEBERT, GRISBAUM and GOTHARD, JJ.
KLIEBERT, Judge.
Defendant Darrell Smith was charged by bill of information with armed robbery in violation of LSA-R.S. 14:64. After trial before a twelve person jury he was found guilty as charged and sentenced to seven years at hard labor. Defendant appeals and urges five assignments of error. We affirm his conviction and sentence.
About 10:45 P.M., on June 21, 1986 Mr. Walter Gordon, the night manager of an A & P Food Store, placed $11,000.00 in cash, checks and food stamps in a bank deposit bag, placed the deposit bag in a brown paper bag and, along with Mr. Benjamin Thompson, a plain clothes security guard for the store, walked across the parking lot to make a deposit in a nearby bank. A black male, brandishing a silver-colored revolver, appeared out of an alleyway at the rear of the bank and ran toward them. Gordon threw down the paper bag and lay face down on the ground. Thompson fled to the front of the bank. The gunman picked up the bag of money and escaped on foot.
Two days later an anonymous caller informed the manager of the A & P Food Store he witnessed the robbery and recognized the perpetrator as a former security guard at the store named Darrell Smith. The manager relayed the information to the Jefferson Parish Sheriff's Office. Investigating officers secured a photograph of Smith and included it in a five-photo lineup which was presented to Gordon and Thompson. Gordon was unable to make an identification; Thompson immediately identified Smith as the gunman and wrote "confident" on the back of the photograph. After Smith's arrest police searched his apartment and found a silver plated automatic, a blue steel revolver, and an empty weapons box for a .357 silver-colored revolver. No cash, checks, or food stamps were recovered.
In his first assignment of error defendant contends the trial court erred in denying his motion to suppress the photographic identification and in allowing the state to introduce the photographs into evidence at trial. Defendant does not object to the identification procedure but rather contends the number of photographs in the lineup and the dissimilar features of the subjects depicted "focused" Thompson's attention on the defendant.
A defendant who seeks to suppress an identification must prove that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lowenfield, 495 So.2d 1245 (La.1985); State v. O'Neal, 478 So.2d 1311 (5th Cir.1985). Photographs employed in a lineup are suggestive if they display a defendant so singularly that the witness' attention is unduly focused on the defendant. State v. Smith, 430 So.2d 31 (La.1983); State v. Medford, 489 So.2d 957 (5th Cir. 1986). Strict identity of physical characteristics among the persons depicted in the photographic array is not required; all that is required is a sufficient resemblance to reasonably test the identification. Smith, supra; Medford, supra. This determination is made by examining articulable features of the pictures such as height; weight; build; hair color, length and texture; facial hair; skin color and complexion; and the shape and size of the nose, eyes, lips, etc. State v. Guillot, 353 So.2d 1005 (La.1977); State v. Medford, supra.
That five photographs were used in the lineup is not in and of itself indicative of suggestiveness. The jurisprudence is replete with cases where lineups containing five and even four photographs were upheld. See State v. Smith, supra (5 photographs); State v. Medford, supra (5 photographs); State v. Franklin, 279 So.2d 163 (La.1973) (4 photographs). Moreover, we have viewed the photographs and find *1308 they display a sufficient similarity between the subjects depicted to reasonably test the identification. The subjects depicted are black males with full facial hair, of apparently the same age group, with hair of similar length.[1] Although some of the subjects appear to have lighter complexions than others (whether due to lighting or natural coloration) at least two or three photographs could have been the defendant. This was a sufficient number to test the identification. Guillot, supra.
Even should the identification be considered suggestive, this alone does not violate due process, for it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Lowenfield, supra. In discussing this principal in Manson, supra, 432 U.S. at 114, 97 S.Ct. at 2253, the United States Supreme Court held:
"We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations. The factors to be considered are set out in [Neil v.] Biggers, 409 U.S. [188], at 199-200, 93 S.Ct. [375], at 382 [34 L.Ed. 2d 401]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."
The area where the robbery took place was well lit. Thompson noticed the gunman as he walked behind the bank and swung wide of the building to get a better view, at which time the gunman ran toward him. Thompson had an "eye-to-eye" view of the gunman for five or six seconds before he turned and ran. As a trained security guard Thompson was conscious of the necessity of remembering what the gunman looked like, and his attention was obviously riveted to the gunman. Thompson's original description of the gunman was a black male, 25 to 30 years old, 5'9" tall, 190 to 200 pounds, large build. The defendant's actual height is 5'5" and he weighs 220 pounds. Thompson also made a positive identification in court. Thompson was not informed a suspect was in the stack of photographs. He was "confident" at both the pretrial identification and trial that the defendant was the gunman. The pretrial identification was made only eight days after the robbery.
Weighing these indicia of reliability against any possible suggestiveness in the identification, it is clear there is not a significant chance of misidentification.
Accordingly, this assignment of error is meritless.
In his second assignment defendant contends the trial court erred in overruling his objection to the selection of a second petit jury venire from the same general jury venire from which the first petit jury was selected. The first petit jury was dismissed after defendant's motion for a mistrial due to a reference to other crimes was granted. At the state's request the court ordered the clerk to immediately draw fifty new jurors from the general jury venire. Defendant contends this procedure was improper because it (1) diluted the number of blacks on the jury and deprived defendant of a jury composed of a fair cross-section of the community, and (2) created the danger of communication of defendant's prior arrest record to the general jury venire by the dismissed jury panel members.
The record reveals defendant did not really object to the procedure but rather stated it was "dangerous" and "all right by me." The record also reflects the court prevented the second petit jury venire from communicating with the dismissed jury panel by keeping the jury panel in the jury room until the fifty prospective jurors were brought into the courtroom. None of *1309 the prospective jurors on the first petit jury venire were recalled. During voir dire the second group of prospective jurors denied any knowledge of the case. Defendant's charge of intermingling between the dismissed jury panel and the prospective jurors is refuted by the record evidence.
Defendant did not raise the fair-cross section argument in the trial court. A new ground of objection cannot be presented for the first time on appeal. La. C.Cr.P. Article 841; State v. Burdgess, 434 So.2d 1062 (La.1983). Moreover, a general jury venire or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant. La.C.Cr.P. Article 419; State v. Perry, 420 So.2d 139 (La. 1982). A defendant has the burden of establishing fraud or irreparable injury in the jury selection process. State v. Brown, 414 So.2d 726 (La.1982).
Because defendant did not raise the fair cross-section argument in the trial court the record does not contain evidence as to the racial composition of the jury. Nor does defendant presume to inform the court as to the number of black persons available on the second petit jury venire or actually on the second petit jury. He only alleges "approximately" seven blacks were available on the first petit jury venire. Defendant fails to establish the second petit jury venire and the second petit jury did not represent a fair cross-section of the community.
This assignment of error is meritless.
In his third assignment defendant contends the trial court erred in overruling an objection to what defendant characterizes as opinion evidence offered by the state through the testimony of Detective Leslie Jones. The specific question to which defendant objected concerned the percentage of armed robbery cases investigated by Detective Jones in which the weapon was recovered. The question was relevant because the weapon was not recovered in the present case. The trial court ruled the question called for an answer based on Detective Jones' experience rather than opinion. Detective Jones testified he recovered the weapon in "very few" armed robbery cases.
Generally, a witness can testify "only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have." La.R.S. 15:463; State v. Kahey, 436 So.2d 475 (La.1983). However, a witness is permitted to draw reasonable inferences from his personal observations. State v. Alexander, 430 So.2d 621 (La.1983). The pertinent inquiry is whether the testimony constituted speculative opinion testimony or simply recitation of or inferences of fact based upon the witness' observations. Alexander, supra.
We conclude, as did the trial judge, that the question called for an answer based on matters clearly within the witness' personal knowledge and experience rather than opinion. The answer given was based on knowledge and experience.
This assignment is meritless.
In his fourth assignment of error defendant contends he is entitled to a new trial because the state exceeded the proper scope of rebuttal in its closing argument by appealing to the prejudice of the jury. The following sequence of events led to the allegations advanced by defendant: Identification of the gunman was the central issue at trial. In closing argument defense counsel attacked Thompson's identification by pointing out he was scared, he viewed the gunman for five to six seconds before turning to run, the lighting at the scene was suspect, and he incorrectly estimated the defendant's height. Defense counsel also attacked the photographic lineup as suggestive and the photographic identification as unreliable. During rebuttal argument the prosecutor made the following statement:
"It seems, according to Mr. O' Neill, nobody could ever be identified in an armed robbery. We all know armed robbers don't hang around for a long time, because they don't want to get identified. According to his testimony no one could be identified in a crime.

*1310 MR. O'NEILL:
Objection. He's not arguing. I never suggested that. I never said anything like that. I ask that be stricken. That's improper. I never said anybody couldn't be identified. That's not fair.
MR. DELAUP:
I have a right to make an observation. Mr. O'Neill testified, making a point. He said this identification couldn't be good, and I have a right to say if you believe him, this identification couldn't be good, then you have to believe that no identification is going to be good.
MR. O'NEILL:
I object.
THE COURT:
Overruled."
La.C.Cr.P. Article 774 restricts closing arguments in criminal cases to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case, and the state's rebuttal is confined to answering the argument of the defendant. State v. Prestridge, 399 So.2d 564 (La.1981). In State v. Messer, 408 So.2d 1354, 1356 (La. 1982) the court held:
"[2] A prosecutor should refrain from argument which tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict. American Bar Association Standard 5.8(d). Also see State v. Hayes, 364 So.2d 923 (La.1978)."
The remarks at issue were essentially comments on the evidence and were offered in rebuttal of defense counsel's argument. See State v. Williams, 341 So.2d 370 (La.1976). However, the remarks can be interpreted as a prediction of the consequences of the jury's verdict on future cases where identification is an issue, and in that respect are perhaps improper. Still, before this court will overturn a guilty verdict for improper argument it must be thoroughly convinced that the jury was influenced by the complained-of remarks and that they contributed to the verdict. State v. Byrne, 483 So.2d 564 (La.1986); State v. Jarman, 445 So.2d 1184 (La.1984).
We cannot say the prosecutor's remarks were of an inflammatory or prejudicial nature. The thrust of the remarks was intended to downplay defense counsel's attack on Thompson's identification. As discussed in the final assignment, the jury's verdict is well supported by the evidence before it. We are not thoroughly convinced the prosecutor's remarks influenced the jury or contributed to the verdict.
This assignment of error is meritless.
In his final assignment defendant contends the evidence introduced by the state was insufficient to justify the verdict. Defendant specifically attacks the identification evidence. Appellate review for minimal constitutional sufficiency of evidence was explained in State v. Rosiere, 488 So. 2d 965, 968 (La.1986) as follows:
"The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)] requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that `assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.' This is not a purely separate test from the Jackson sufficiency standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Garcia, 483 So.2d 953 (La.1986); State v. Poretto, 468 So.2d 1142 (La. *1311 1985). State v. Wright, 445 So.2d 1198 (La.1984)."
To support an armed robbery conviction the state must prove beyond a reasonable doubt that the defendant took anything of value belonging to another, from the person or immediate control of the other, by use of force or intimidation while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Franklin, 501 So.2d 881 (5th Cir.1987); State v. Augustine, 482 So.2d 150 (4th Cir.1986). Defendant does not contest that an armed robbery took place but rather contends he was not the robber. Thus, we must determine whether the evidence, both direct and circumstantial, was sufficient to convince a rational trier of fact that the defendant committed the robbery.
The only direct evidence of guilt was Thompson's identification of the defendant as the gunman. We previously determined the circumstances surrounding the identification do not suggest a substantial likelihood of misidentification (assignment of error No. 1). Circumstantial evidence of defendant's guilt included the following:
(1) he was a former security guard at the store and knew the deposit procedure as he accompanied the manager on deposit trips before he was taken off the store detail;
(2) he was taken off the store detail because he entered the manager's office without permission on the day $2,000.00 was taken from the office;
(3) he cashed a check at the store the day before the robbery and saw that a new manager who did not know him, i.e., Mr. Gordon, was working there;
(4) he lived within four blocks of the store;
(5) he had in his residence a weapons box for a gun which matched the description of the holdup weapon;
(6) within a week of the robbery his wife purchased new furniture worth $1,000.00.
Viewed in the light most favorable to the prosecution, the evidence, both direct and circumstantial, was sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant committed the armed robbery. Defendant's testimony he was home watching television and did not commit the robbery was obviously rejected by the jury. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, supra.
This assignment of error is meritless.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Height and weight are of limited relevance where, as in this case, the photographs show only the shoulders and head. See State v. Guillot, supra.