566 So.2d 635 (1990)
STATE of Louisiana
v.
Kenneth McCULLOUGH.
No. 90-KA-139.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1990.
*636 John M. Mamoulides, W.J. LeBlanc, Dorothy A. Pendergast, Dist. Attorney's Office, Parish of Jefferson, Gretna, for plaintiff-appellee.
Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant-appellant.
Before CHEHARDY, GAUDIN and GOTHARD, JJ.
GAUDIN, Judge.
This is an appeal by Kenneth McCullough from his first degree murder conviction. He was sentenced to life in prison for the May 6, 1984 killing of Albert Alonzo, Sr. in Gretna, Louisiana. For the following reasons, we affirm his conviction and sentence.
Alonzo had gone to a neighbor's assistance after seeing two suspicious men, later identified as McCullough and Thomas Medford, force their way into the neighbor's house. In a fight that ensued, Alonzo was fatally shot by McCullough.
On October 12, 1984, the Jefferson Parish Grand Jury indicted McCullough and Medford for first degree murder (LSA-R.S. 14:30). Medford went to trial and was convicted. See State v. Medford, 489 So.2d 957 (La.App. 5 Cir.1986).
McCullough, however, remained at large until 1988 when he was apprehended in Alabama and returned to Louisiana.
McCullough's trial commenced on May 15, 1989. He was found guilty as charged and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. The jury could not unanimously agree on the death penalty.
On appeal, McCullough argues that the trial court erred:
(1) in admitting into evidence copies of Telex records received from Alabama,
(2) in denying appellant's motion to quash for failure to begin the trial within the statutory time allowed, and
(3) in denying a motion for a mistrial premised upon the repeated improper arguments of the prosecutor in his rebuttal argument.

THE CRIME
On the evening of May 6, 1984, McCullough and Medford, both armed with pistols, went to the Gretna residence of George Plaisance, Jr. When Plaisance answered the front door, McCullough and Medford pushed the door open and forcibly entered. McCullough pointed his weapon at Plaisance and asked if anyone else was at home. Plaisance said his wife and two children were there.
The two gunmen and Plaisance, with McCullough's gun pointed at Plaisance, went to the master bedroom, where Mrs. Plaisance was watching television. Medford threatened Mrs. Plaisance by placing his pistol at her head.
Unknown to McCullough and Medford, Alonzo, who lived across the street from the Plaisance residence, had seen the gunmen force their way in. He and his son, Marty, went to Plaisance's home to investigate and, if needed, to help. The Alonzos knocked on the front door and were let in by Plaisance's son, George III, who was unaware of the presence of McCullough and Medford elsewhere in the house.
Moments later there was a physical confrontation when the Alonzos met McCullough and Medford in a hallway. In the *637 melee[1], McCullough shot Albert Alonzo in the head, killing him. Plaisance and Marty Alonzo were also shot but their wounds were not fatal. McCullough and Medford fled but were later captured and brought to trial, Medford in 1985 and McCullough in 1989.

ASSIGNMENT NO. 1
In this assignment of error, McCullough contends that the trial judge admitted into evidence copies of 13 teletype messages from police agencies in Alabama in violation of the rule prohibiting hearsay. This occurred while a deputy sheriff was testifying during a motion to quash the indictment, which was heard in district court on February 28, 1989, three months before the actual trial.
The teletype messages were sent from Alabama to Jefferson Parish during attempts by police here to locate McCullough and have him returned to this state.
The motion to quash was heard after the effective date[2] of the new Louisiana Code of Evidence. The public records exception to the hearsay rule is in Art. 803(8), as follows:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
"(8) Public records and reports. (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
"(i) Its regularly conducted and regularly recorded activities;
"(ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report; or
"(iii) Factual findings resulting from an investigation made pursuant to authority granted by law. Factual findings are conclusions of fact reached by a governmental agency and may be based upon information furnished to it by persons other than agents and employees of that agency.
"(b) Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule:
"(i) Investigative reports by police and other law enforcement personnel.
"(ii) Investigative reports prepared by or for any government, public office, or public agency when offered by that or any other government, public office, or public agency in a case in which it is a party.
"(iii) Factual findings offered by the prosecution in a criminal case.
"(iv) Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences."
Historically, trustworthiness has been recognized as the foundation of the public records exception, which existed in this state prior to 1989. See State v. Nicholas, 359 So.2d 965 (La.1978), and State v. Dewhirst, 527 So.2d 475 (La.App. 5 Cir. 1988). Art. 803(8) ensures the trustworthiness of public records sought to be introduced as evidence in a criminal proceeding by distinguishing between those records reflecting basic factual information and prepared during the course of a government agency's regular activities or duties, and those records which reflect conclusions or inferences drawn from such basic factual information. The former category of records is admissible as evidence in a criminal proceeding, while the latter category is not admissible. This distinction further safeguards the criminal defendant's confrontation rights as guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 16 of the Louisiana Constitution of 1974.
A careful study of the 13 teletypes from Alabama challenged by McCullough suggests *638 that these teletypes, while constituting hearsay evidence, are subject to the public records exception to the rule excluding hearsay. The teletypes were prepared by Alabama law enforcement personnel whose duty assignments include locating and extraditing persons wanted by other jurisdictions. The issuance of the teletypes was effected as part of the regularly conducted and regularly recorded activities of these law enforcement personnel. There are no factual findings or investigative conclusions in the teletypes. The material is limited to basic or primary facts. Accordingly, the teletypes forming the basis of this error assignment are subject to the public records exception to the rule excluding hearsay evidence.
Moreover, these teletypes were relevant to the issues presented at the hearing on the motion to quash. See Louisiana Code of Evidence Arts. 401, 402. Deputy Steve Klein, through his testimony and production of these teletypes from his file, properly identified and authenticated this evidence as required by Louisiana Code of Evidence Art. 901.
The application of the new Louisiana Code of Evidence to the hearing now on review does not work an injustice. The same result would be reached on this assignment of error under the former evidentiary rules, LSA-R.S. 15:434.

ASSIGNMENT NO. 2
Appellant relies, in this assignment of error, on LSA-C.Cr.P. art. 578, which states that a trial in a capital case must start within three years of the indictment. McCullough's indictment was returned by a grand jury on October 12, 1984.
The three-year period, however, may be interrupted. LSA-C.Cr.P. art. 579 states:
A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
The record here shows that when the Jefferson Parish indictment was handed down, Deputy Klein of Jefferson knew that McCullough was incarcerated in Mobile, Alabama. Extradition proceedings were instituted on January 30, 1985, but before McCullough could be extradited he was released from the Mobile city jail by mistake in March, 1985.
McCullough's whereabouts were unknown to Jefferson Parish authorities until January, 1988, when word was received that McCullough was in jail in Huntsville, Alabama. McCullough was returned to Louisiana and arraigned on July 15, 1988.
From the time McCullough was erroneously released in Mobile until he was incarcerated in Huntsville, Jefferson officials persisted in their efforts to locate the fugitive in Alabama and Tennessee. McCullough avoided detection until January 7, 1988, when Jefferson Parish was advised that McCullough was jailed in Huntsville.
Clearly, Art. 578's prescriptive period was interrupted by McCullough's inadvertent release in Mobile. McCullough's reliance on State v. Groth, 483 So.2d 596 (La.1986), and State v. Amarena, 426 So.2d 613 (La.1983), is misplaced because of obvious factual differences between these cases and appellant's situation.

ASSIGNMENT NO. 3
In this assignment of error, McCullough points out three statements made by the prosecuting attorney during his rebuttal argument constituting, appellant believes, reversible error.
*639 LSA-C.Cr.P. art. 774 defines the scope of argument permitted in a criminal trial. The state's rebuttal is limited to answering the defendant's argument.
The first complained-of instance relates to a person named Steve Wilson, who drove McCullough and Medford to the Plaisance residence. The defense alleged that Wilson was the true perpetrator of this crime and that McCullough had been mistakenly identified.
During his rebuttal, the prosecutor said: "The defense has had an opportunity ever since (the time of arrest) to subpoena a photograph of Steve Wilson."
Defense counsel immediately objected and moved for a mistrial, which was denied by the trial judge.
At trial and now on appeal, McCullough contends that the prosecutor's comment was a misstatement of facts. A pre-trial motion to obtain a photograph of Wilson had been denied by the trial court. The defendant thus accuses the state of misleading the jury. However, as the trial judge correctly pointed out in overruling the defendant's objection, the pre-trial motion forming the basis of the defense objection differed from a subpoena for Wilson's photograph. The pre-trial motion denied by the trial judge requested the court to order the state to provide the defense with the photographs of the defendant used in the photographic line-up and a photograph of Wilson. The denial of that motion had no effect on the defendant's right to seek and obtain a subpoena for Wilson's photograph directed to the Jefferson Parish Sheriff's Office, the District Attorney's office or any other government agency which might possess a photograph of Wilson. Considering this distinction, the prosecutor's comment here challenged by the defendant was within the proper scope of rebuttal argument. The trial judge correctly overruled the defendant's objection to that comment.
The defendant next challenges a statement by the prosecutor concerning the trial testimony of Medford. As part of its case, the defense called Medford, who took the witness stand and invoked the Fifth Amendment in response to all questions asked by counsel for the defense and the prosecutor. The defendant also testified at trial. During rebuttal argument, the prosecutor made the following comment: "When Mr. McCullough got on the stand, he said he wanted Mr. Medford to testify. We didn't hear anything. Could it have been because he would have told the full involvement of Kenneth McCullough?" Defense counsel's objection to the comment was overruled and his motion for a mistrial was denied.
The prosecutor's suggestion that Mr. Medford's testimony might have implicated the defendant in the commission of this crime was proper. The defendant, himself, called Medford to testify as part of the defense's case in chief. The fact that Medford invoked his own constitutional rights under the Fifth Amendment does not preclude the state from drawing conclusions based on the lack of evidence supporting the defense asserted by the defendant. See State v. Thomas, 504 So.2d 907 (La. App. 1st Cir.1987), writ denied, 507 So.2d 225 (La.1987). The trial court therefore properly overruled the defendant's objection to the prosecutor's statement.
Finally, the defendant challenges a comment by the prosecutor suggesting that strict adherence to the rules of evidence was necessary at trial because the defense did not want certain evidence admitted. Counsel for the defense objected to the comment when the prosecutor made it. The trial judge sustained that objection and admonished the jury, instructing them that both the prosecutor and the defense must strictly follow the rules of evidence in order to offer and introduce evidence.
The prosecutor's comment in this instance went beyond the scope of argument permitted by Art. 774. However, the trial judge's admonishment to the jury adequately and appropriately cured this mistake. There is no indication that this statement influenced the jury or contributed to the guilty verdict rendered by the jury. See State v. Cockerham, 442 So.2d 1257 (La.App. 5 Cir.1983).
*640 Even if it is assumed, for the sake of argument, that all of the statements challenged by the defendant violate the scope of argument permitted by Art. 774, the prejudicial effect of those statements, individually and collectively, is negligible when measured against the overwhelming evidence supporting McCullough's conviction. Any error in allowing the prosecutor to make these statements would constitute harmless rather than reversible error. See State v. Martin, 525 So.2d 535 (La.App. 5 Cir.1988).
In addition to considering the errors assignments by McCullough, we also examined the record for errors patent. Finding none, we affirm McCullough's conviction and sentence.
AFFIRMED.
NOTES
[1] A more detailed description of this incident is contained in State v. Medford, supra, at pages 958 and 959.
[2] Which was January 1, 1989.