660 So.2d 1207 (1995)
STATE of Louisiana
v.
Brian BORDENAVE and Kevin Anderson.
No. 93-KA-1682.
Court of Appeal of Louisiana, Fourth Circuit.
August 23, 1995.
*1209 Harry F. Connick, District Attorney for Orleans Parish, Jack Peebles, Assistant District Attorney for Orleans Parish, New Orleans, for appellee.
F. Rivers Lelong, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellant, Kevin Anderson.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant, Brian Bordenave.
Before BARRY, BYRNES and WALTZER, JJ.
BARRY, Judge.
Brian Bordenave and Kevin Anderson were jointly tried and convicted of the armed robbery and attempted first degree murder *1210 of George Lewis. La.R.S. 14:64 and 14:27(30). Bordenave was also charged with one count of attempted first degree murder of Officer Daniel Scanlan, but a mistrial was declared due to a hung jury. Anderson was charged with one count of attempted first degree murder of Officer Kenneth Watzke and two counts of being a convicted felon in possession of a firearm, but those charges were nolle prosequied.
Each defendant was sentenced to forty years at hard labor without benefit of parole on the armed robberies, and forty years at hard labor without parole for the attempted first degree murder of Lewis, the sentences to run concurrently. The trial court ordered each defendant to pay court costs or serve thirty days in lieu of payment. Anderson was adjudicated a multiple offender and resentenced to forty-nine years and six months at hard labor without benefit of parole for the armed robbery.
Anderson asserts the trial court erred by admitting hearsay evidence of other crimes, by refusing to sever the trials, the evidence was insufficient, and ineffective assistance of counsel. We reverse Anderson's convictions and remand for a new trial on the armed robbery charge. Bordenave claims the trial court erred by admitting evidence of other crimes, evidence concerning Bordenave's tattoos, and that the evidence was insufficient. We reverse Bordenave's conviction for first degree murder, enter a conviction for second degree murder and remand for resentencing on that charge. We affirm Bordenave's conviction for armed robbery, amend his sentence and affirm as amended.

Facts
George Lewis and his cousin Patrick Leon testified that on November 8, 1991 Lewis rode his bicycle past Bordenave and another male who were standing next to a gray-blue station wagon. Bordenave ran to Lewis, held a gun to his head, and demanded his football jacket. Leon was half a block behind Lewis, witnessed the incident, and ran to assist Lewis. Leon came within feet of the incident and recognized Bordenave and Anderson. Lewis knocked the gun out of Bordenave's hand, they struggled for the jacket and Anderson (whose face Lewis did not see) told Bordenave to hurry and "get the jacket." The gun went off and struck Lewis in the hand. Lewis ran and Bordenave chased and fired several shots, two of which hit Lewis. Leon ran in the same direction as Lewis but on the other side of the street and hid behind a van. Both defendants got into the station wagon and continued to pursue Lewis. Lewis collapsed and Bordenave exited the car, took the jacket, and the defendants fled.
Leon identified the car on November 13, 1991 and the defendants in a photographic lineup on November 15, 1991 and at trial. Lewis identified Bordenave in a photographic lineup on November 15, 1991 and in court, but he was unable to identify Anderson because he did not see Anderson's face during the attack.
Officers Scanlan and Watzke testified they chased a gray-blue station wagon on November 13, 1991 (five days after the armed robbery and shooting). The officers attempted to stop the vehicle for a routine traffic stop (the officers did not see the license plate in the window), and a chase ensued. Both officers testified that a weapon was thrown from the rear of the station wagon. The station wagon stopped after it collided with a car. The driver of the station wagon, identified as Bordenave, ran and was pursued by Officer Scanlan. Two other occupants went in another direction and were chased by Officer Watzke. Officers Virgil Duplessis and Dennis De Jean were called to back up during the chase and corroborated the officers' testimony.
Officer Scanlan testified that Bordenave held one or two guns when he alighted from the station wagon and fired several shots at Scanlan during the foot chase. Officer Scanlan caught up with Bordenave, ordered him to drop the gun (a cocked and loaded Beretta 92-F), and arrested him. Bordenave was wearing a football jacket.
Officer Watzke chased the other two occupants of the station wagon. One male aimed a pistol at Watzke and escaped. Watzke caught and arrested Jerome Eggerson. Eggerson did not testify, but Watzke said Eggerson *1211 identified Anderson as the rear seat passenger.
Brenda Ledlow, a passenger in the car that was hit by the station wagon, and two witnesses, Christina Quezergue and Leon Abney, testified that a gray-blue station wagon was fleeing from police and collided with the car. Quezergue and Abney testified that three men alighted from the station wagon two ran in one direction, the other ran in another direction. The police chased the males and gunfire was exchanged.
Officer Kerry Granderson said that on November 13, 1991 he met Leon at the scene of the car accident and Leon identified the station wagon from the armed robbery. Officer Granderson learned the identities of the car's occupants and compiled a photographic lineup. Two days later Leon identified the defendants and Lewis identified Bordenave in the photographic lineup.
Officer Len Davis participated in Anderson's arrest on November 15, 1991. Anderson was in a taxicab on the interstate highway being pursued by police. According to testimony at the preliminary hearing, police were looking for Anderson for crimes unrelated to this appeal. The cab stopped and Anderson fled on foot. Officers chased him and he dropped a Glock 9mm. The officers caught Anderson who was in possession of another Glock 9mm and two shoulder holsters.
Bordenave testified that he did not recall anything about November 8, 1991, but he did not rob Lewis. He admitted that he drove the station wagon on November 13, 1991 and claimed he was with Eggerson and someone named Shawn. He did not stop because the two males in his vehicle had guns. Bordenave denied that he had a gun and claimed the officers shot at him. He said he paid $500 cash for the station wagon at a used car lot on November 11, 1991 (three days after the armed robbery).
Melvin Cousins, owner of a car lot, testified that a (now deceased) salesman sold the station wagon to Ida Hands on November 12, 1991. Three people came to get the car but Cousins did not remember Bordenave. The record does not show how long the car was on the lot prior to November 12, 1991. Detective John Riviere checked the vehicle identification number on the day of trial and the car was registered to someone in another parish.

Assignments of Error by Anderson

Sufficiency of the Evidence
Anderson argues that the intent to kill more than one person was improperly used as an aggravating circumstance to support the attempted first degree murder charge, and there was insufficient evidence of intent to kill.
The bill of information did not specify the aggravating circumstance upon which the attempted first degree murder charge was based. In response to a motion for bill of particulars, the State asserted that the charge was based on La.R.S. 14:30(A)(1), a killing when the perpetrator is engaged in an enumerated offense (here, armed robbery), and La.R.S. 14:30(A)(2), a killing when the perpetrator has the specific intent to kill a peace officer. Because the response was addressed to both defendants, the State apparently intended to proceed under La.R.S. 14:30(A)(1) for the attempted murder of George Lewis, and La.R.S. 14:30(A)(2) for the attempted murders of Officer Scanlan (by Bordenave) and Officer Watzke (by Anderson). The defense filed a motion to quash the indictment for attempted first degree murder of Lewis based on double jeopardy. The defense argued that an accused cannot be convicted of attempted first degree murder based on an enumerated felony and of the underlying offense.
The trial court acknowledged that a conviction for attempted first degree murder and the underlying felony offense violates double jeopardy. See State ex rel Adams v. Butler, 558 So.2d 552 (La.1990); State v. Stevenson, 597 So.2d 74 (La.App. 4th Cir.), writ den. 600 So.2d 637 (La.1992). The trial court denied the motion to quash because the charge was supported by the State's theory that the defendant intended to kill more than one person. La.R.S. 14:27(30)(A)(3). The judge charged the jury under that paragraph of the attempted murder statute, and the defense did not object.
*1212 The purpose of a bill of information is to give sufficient notice to the defendant of the charges against him. La.C.Cr.P. art. 464. A bill is not defective if it does not contain the aggravating circumstance for first degree murder. State v. Bourque, 622 So.2d 198, 219 (La.1993). However, the defendant is entitled to notice in advance of trial. Id. Although the State did not specify that it would proceed under La.R.S. 14:30(A)(3), Anderson was put on notice prior to trial when the trial court denied his motion to quash. He did not object and does not argue prejudice.
Anderson next argues that the evidence is insufficient to support his convictions. In evaluating sufficiency of the evidence this court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757, 758 (La.App. 4th Cir.1991).
La.R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Thus, the State may prove a defendant guilty by showing that he aided and abetted another in the alleged offense.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64. Under R.S. 14:24 a principal need not actually hold the weapon or perform the taking to be guilty. Compare State v. Baum, 533 So.2d 110 (La.App. 4th Cir.1988), which affirmed a purse snatching conviction where the defendant drove the getaway car and was present when his co-perpetrator snatched the victim's purse; State v. Doucet, 93-1523 (La.App. 3 Cir. 5/4/94), 638 So.2d 246, where the evidence did not support a conclusion that the defendant knew of the existence of a knife before or during the robbery or that the co-perpetrator might lead the victim to believe that he was armed with a dangerous weapon, and the evidence was insufficient to support first degree robbery, but sufficient to support simple robbery.
The testimony established that Anderson directly urged Bordenave to "get the jacket," stood by as Bordenave held the gun and fired at Lewis, and accompanied Bordenave in the getaway. Bordenave took something of value by force while armed with a dangerous weapon. La.R.S. 14:64. The evidence clearly establishes that Anderson was a principal to the armed robbery.
However, an individual may only be convicted for those crimes for which he has the requisite mental state. State v. Pierre, 93-0893 (La. 2/3/94), 631 So.2d 427, 428; State v. Holmes, 388 So.2d 722, 726 (La. 1980). Attempted murder, whether first degree or second degree, requires specific intent to kill and commission of an overt act toward that goal. State v. Martin, 92-811 (La.App. 5 Cir. 5/31/94), 638 So.2d 411, 413. Specific intent is that state of mind which exists when "the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific intent may be inferred from the circumstances. State v. Holliday, 623 So.2d 127, 129 (La.App. 1st Cir.), writ den. 629 So.2d 358 (La.1993).
Specific intent required of a co-perpetrator has been examined in first degree murder cases:
In the case of a first degree murder conviction, the requisite mental state is that the defendant had the specific intent to kill. It is not enough to find merely that his coconspirator or accomplice had the necessary mental state, since this intent cannot be inferred to the accused. It must be shown that this accused also had the specific intent to kill.
State v. Medford, 489 So.2d 957, 965 (La.App. 5th Cir.1986), quoting State v. Holmes, 388 So.2d at 726. See also State v. Tobias, 452 So.2d 157 (La.1984).
*1213 In State v. Medford, supra, the defendant and his co-perpetrator forced their way into a family residence and the defendant held a gun to the wife's head. The defendant shot and wounded a neighbor who entered to assist the victims and the co-perpetrator fatally shot that neighbor. The Fifth Circuit affirmed defendant's conviction for first degree murder.
In State v. Tobias, supra, the co-perpetrator fired the fatal shot after the defendant menaced the victim with a wine bottle and told the victim "Keep talking and you die." The court affirmed defendant's conviction:
(The defendant's) actions certainly expressed animosity toward the victim. Whether they evidenced a specific intent to kill (the victim) is a more difficult question. On one hand, (the defendant), while wanting to scare (the victim), may have had no intention to kill him. On the other hand, (the defendant) and (the accomplice) may have planned to kill (the victim) when they approached(the defendant's) statement before the murder supports such intent. We conclude that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the state proved (the defendant's) intent to kill the victim beyond a reasonable doubt.
State v. Tobias, 452 So.2d at 159.
In State v. Pierre, supra, the defendant was charged with second degree murder, a specific intent homicide, and convicted of manslaughter. The court reversed because the evidence proved the defendant's involvement in the victim's rape shortly before the murder, but did not show he specifically intended to kill the victim.
Anderson did not have a gun, did not threaten Lewis or counsel Bordenave to shoot Lewis. He told Bordenave to take the jacket, but did not urge Bordenave to shoot or participate in the shooting. Because the evidence does not show that Anderson had the requisite specific intent to kill, Anderson's conviction for attempted first degree murder is reversed and his sentence on that charge is vacated.

Hearsay
Anderson argues that the trial court erred by admitting hearsay testimony from Officer Watzke that Eggerson identified Anderson as the back seat passenger in the station wagon on November 13, 1991.
The defense did not object to the prosecutor's reference to that testimony during the opening statement and did not object to Officer Watzke's testimony. That issue was not preserved for appeal. La.C.Cr.P. art. 841. Nonetheless, the argument has no merit.
Hearsay is a statement other than one made by the declarant while testifying at trial which is offered to prove the truth of the matter asserted. La.C.E. art. 801(C). A statement which is offered to explain why the officer began his investigation after receiving the information (rather than to prove the truth of the matter asserted) is not hearsay. State v. Smith, 400 So.2d 587, 591 (La.1981); State v. Calloway, 324 So.2d 801, 809 (La. 1975).
In State v. Calloway properly admitted evidence showed that a black Cadillac was in front of the store at the time of the robbery. The Court allowed the arresting officer to testify that he received a report that two suspects were in a black Cadillac. The Court reasoned that information was not admitted to prove its truth but to explain the sequence of events leading to the defendant's arrest from the viewpoint of the arresting officer. Calloway, 324 So.2d at 809.
Calloway is controlling. Properly admitted testimony established that the perpetrators of the armed robbery escaped in a gray-blue station wagon. Leon identified the station wagon that was involved in the November 13, 1991 chase as the vehicle used in the November 8, 1991 armed robbery. Eggerson's statement was not offered to prove the truth of the matter asserted, rather to explain from the investigating officer's viewpoint those events which led to Anderson's investigation and indictment.
State v. Wille, 559 So.2d 1321 (La.1990) is distinguishable because the out of court statement in Wille implicated the defendant in the crime. Officer Watzke's testimony as to Eggerson's statement implicated *1214 Anderson in the events of November 13, 1991 but did not name Anderson as the perpetrator of the November 8, 1991.

Other Crimes Evidence
Anderson argues the State improperly introduced evidence of other crimes. That argument has merit.
During the opening statement the prosecutor described the November 13, 1991 chase:
Meanwhile, Officer Watzke had been chasing Kevin Anderson and Jerome Eggerson.... Kevin Anderson stops and points a gun at him. He will tell you it appeared to be a 9mm type weapon, but no shots are fired. No shots are fired. They don't know whether he just pointed, whether the gun jammed, or what.
The prosecutor described Anderson's November 15, 1991 arrest and told the jury that Anderson fled from police, "pitche(d) a Glock, a 9mm Glock," and that police found another 9mm Glock and two shoulder holsters on Anderson.
Defense counsel objected and moved for a mistrial based on the reference to other crimes. That motion was denied and preserved for appeal.[1]
In addition to the prosecutor's reference, testimony and evidence of other crimes were admitted at trial.
Officer Watzke testified that during the November 13 chase, "one of the subjects turned on (Officer Watzke) with a pistol in his hand." The court sua sponte prevented Officer Watzke from testifying that the subject's co-perpetrator (Eggerson) identified him as Anderson. Officer Watzke testified without objection that Anderson was the back seat passenger who threw a gun out of the window.
Officers Len Davis and Melvin Parker participated in Anderson's arrest on November 15, 1991 and testified that Anderson discarded one gun from under his jacket and was found in possession of another gun in a shoulder holster. The guns and two holsters were admitted into evidence over objection.
A mistrial is mandated upon motion of a defendant when the prosecutor makes a remark or comment within hearing of the jury during the trial or in argument which refers to another crime committed by the defendant as to which evidence is inadmissible. La. C.Cr.P. art. 770(2).
The state argues the evidence is admissible as part of the res gestae of the armed robbery and attempted first degree murder of Lewis.
Evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that he acted in conformity therewith. La.C.E. art. 404(B)(1). However, it may be admissible when it relates to conduct that constitutes an integral part of the act that is the subject of the present proceeding (formerly "res gestae").[2]Id. In such a case the evidence is not admitted to depict the defendant as a bad person; rather, it is admitted to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. State v. Brewington, 601 So.2d 656, 657 (La.1992).
Evidence of another crime is admissible under that exception when it is an inseparable part of the whole deed. State v. Haarala, 398 So.2d 1093, 1097 (La.1981). The evidence must be related and intertwined with the charged offense to such an extent that the state could not accurately present its case without reference to it. State v. Moore, 26,329 (La.App. 2 Cir. 8/17/94), 642 So.2d 679, 682-83. A close connection in time and location is essential to this exception because no notice of the state's intention to introduce "res gestae" evidence *1215 is required. State v. Haarala, 398 So.2d at 1097. See State v. Prieur, 277 So.2d 126, 130 (La.1973).
In State v. Jenkins, 573 So.2d 1214 (La. App. 4th Cir.1991), the defendant was arrested in a third person's apartment and charged with murder. This Court held that guns found in the apartment at the time of the arrest were irrelevant and inadmissible. The error of admitting the evidence was harmless because the record clearly established that the defendant did not own the apartment and the guns were not used in the murder.
Evidence that Anderson pointed a gun at Officer Watzke during the November 13, 1991 chase and that Anderson was in possession of two guns and shoulder holsters on November 15, 1991 is irrelevant and inadmissible. The events of November 13 and 15 were removed from the armed robbery by time and location. There was no evidence that Anderson's alleged reaction to Officer Watzke was connected to the armed robbery or that the guns which Anderson possessed on November 13 and 15 were used in that offense.
The state argues that flight is admissible to show the defendant's guilt and evidence of the weapons found at the time of Anderson's arrest are res gestae to flight. That argument has no merit.
Evidence of flight at the time of the arrest shows consciousness of guilt and is relevant and generally admissible. State v. Washington, 430 So.2d 641, 648 (La.1983). However, when the flight constitutes another crime it must be excluded if its admission would unfairly prejudice the defendant. See State v. Lee, 381 So.2d 792, 794 (La.1980). Evidence of flight which constitutes evidence of another criminal act is inadmissible unless it is substantially relevant for something other than to show a probability that the defendant committed the crime on trial in conformity with the defendant's criminal character. State v. Davenport, 445 So.2d 1190, 1196 (La.1984).
In State v. Lee, supra, the court held that evidence of the defendant's escape from a police car six weeks after his arrest was inadmissible evidence of another crime (simple escape) because it was not part of the res gestae and its prejudicial effect clearly outweighed its probative value. The court noted that the escape was not significantly probative of his guilt because it might have been motivated by other reasons such as prison conditions or a desire for freedom.
Anderson's resisting an officer, and possession of concealed weapons constituted other crimes which were inadmissible. Anderson's flight was not significantly probative of his guilt on the armed robbery or attempted murder of Lewis because at the time of his arrest Anderson was sought for an unrelated murder. Thus consciousness of guilt of the crime charged could not reasonably be inferred from his flight and the prejudicial effect of the evidence outweighed its probative value. The prosecutor's reference to other crimes allegedly committed by Anderson mandates a mistrial as to Anderson under La.C.Cr.P. art. 770(2). See State v. Vanderlinder, 552 So.2d 1274, 1276 (La.App. 5th Cir.1989).
In addition to the prosecutor's remarks, the testimony and evidence of other crimes was inadmissible and its admission was not harmless error.
The task of a reviewing court conducting a harmless error analysis is to determine whether the error contributed to the verdict or whether `the force of the evidence presumably considered by the jury in accordance with the instructions [of the court] is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [error].'
State v. Corley, 93-1934 (La. 3/11/94), 633 So.2d 151, 154, cert. den. ___ U.S. ___, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994), quoting Yates v. Evatt, 500 U.S. 391, 405, 111 S.Ct. 1884, 1893-94, 114 L.Ed.2d 432 (1991).
The repeated references to other crimes allegedly committed by Anderson (aiming a gun at Officer Watzke, resisting arrest, carrying concealed weapons) clearly painted Anderson as a person of bad character and was highly prejudicial. There was no evidence that Anderson possessed a gun during the robbery and attempted murder of *1216 Lewis and, although Leon positively identified Anderson as the perpetrator, Lewis was unable to identify him. The evidence is not so overwhelming as to establish beyond a reasonable doubt that the verdict would have been the same absent the error.
We reverse Anderson's conviction for armed robbery, vacate his sentence, and remand for a new trial on that charge. We pretermit Anderson's remaining assignments of error as to denial of a severance and ineffective assistance of counsel.

Assignments of Error by Bordenave

Sufficiency of the Evidence
Bordenave alleges double jeopardy and insufficient evidence to convict him of the attempted first degree murder of Lewis.
As detailed above, the defendant had notice that the aggravating circumstance for the attempted first degree murder was the intent to kill more than one person. La. R.S. 14:27(30)(A)(3). The trial judge informed the defendant when he denied the motion to quash and the judge properly charged the jury on that offense. Bordenave did not object and does not show prejudice.
The evidence does not establish beyond a reasonable doubt that Bordenave had the specific intent to kill more than one person and is insufficient to convict under La.R.S. 14:27(30)(A)(3). Leon was in the area and sought cover when Bordenave fired at Lewis. However, both Lewis and Leon testified that Bordenave shot only at Lewis. Considering that testimony, we reject the state's argument that maps of the area established that Bordenave also shot at Leon. The evidence does not show beyond a reasonable doubt that Bordenave had the specific intent to kill more than one person and is insufficient to support a conviction for attempted first degree murder of Lewis.
This case is distinguishable from State v. Tyler, 342 So.2d 574, 582 (La.1977), cert. den. 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977), which held the evidence was sufficient to convict of first degree murder where the defendant indiscriminately shot one shot at point blank range into a crowd. The bullet passed through the neck of the deceased victim and hit the arm of a second person. This case is distinguishable because Leon apparently was not in the line of fire when Bordenave shot Lewis. Though Leon ran in the same direction as Lewis, Leon testified that he was on the opposite side of the street and that Bordenave shot only at Lewis.
Attempted second degree murder is a responsive verdict to attempted first degree murder. La.C.Cr.P. art. 814(A)(2). Second degree murder is defined in pertinent part as:
The killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm.
La.R.S. 14:30.1.
Attempt requires the specific intent to commit a crime and the commission or omission of an act toward accomplishing that object. La.R.S. 14:27.
Bordenave shot Lewis in the hand, chased him, and shot several more shots, two of which hit Lewis. The evidence clearly supports a conviction for attempted second degree murder under La.R.S. 14:27(30.1).
We reverse Bordenave's conviction for attempted first degree murder and enter a conviction for attempted second degree murder. Bordenave's sentence is vacated and the matter remanded for resentencing.

Evidence of Tatoos
Bordenave argues that the trial court erred by allowing testimony that he had tattoos of a gun and the statement "Above the law." That argument has no merit.
Bordenave testified on cross examination that he does not like guns. The prosecutor then asked Bordenave what one of his tattoos reads, and Bordenave responded, "Above the law." The trial court overruled defense counsel's objection. Bordenave stated he has another tattoo of a discharging gun. Bordenave again denied that he likes guns.
Bordenave argues the tattoos are irrelevant, and that his testimony that he got the tattoos while "[he] was in the back" indicated to the jury that he had been arrested on other charges. The evidence is relevant to *1217 impeach Bordenave's credibility and testimony that he does not like guns. Moreover, there is no evidence that the jury knew Bordenave had other arrests.

Other Crimes Evidence
Bordenave adopts Anderson's argument that the trial court improperly admitted other crimes evidence. That argument has no merit.
The prohibition against evidence of other crimes pertains to other crimes by the defendant, not other crimes of someone else. State v. Olson, 503 So.2d 779, 782 (La.App. 3d Cir.), writ den. 508 So.2d 85 (1987). The evidence of other crimes pertained to other crimes allegedly committed by Anderson, and that argument is not applicable to Bordenave.

Error Patent
The trial court ordered the defendants to serve thirty days in jail in default of payment of court costs. That sentence is illegal.
Bordenave is represented on appeal by OIDP and his indigence is established. State v. Huffman, 480 So.2d 396, 399 (La.App. 4th Cir.1985). An indigent defendant cannot be subjected to imprisonment because he cannot pay a fine or court costs. State v. Berryhill, 562 So.2d 1105, 1111 (La.App. 4th Cir.1990). Therefore, we delete that portion of the sentence which imposes a jail term in lieu of costs.
Additionally, the trial court incorrectly denied parole eligibility for the attempted first degree murder convictions. See La.R.S. 14:27(D)(1), which does not prohibit parole eligibility. However, we need not address that issue because defendants' sentences for the attempted first degree murder convictions are vacated.

Conclusion
Anderson's conviction for attempted first degree murder of Lewis is reversed due to insufficient evidence and his sentence on that charge is vacated. Anderson's conviction for the armed robbery of Lewis is reversed based on the prosecutor's reference to other crimes, his sentence is vacated, and the case is remanded for a new trial on the armed robbery count.
We affirm Bordenave's conviction for armed robbery. The portion of his sentence requiring jail time in default of payment of court costs is deleted and his sentence for the armed robbery of Lewis is affirmed as amended. We reverse Bordenave's conviction for attempted first degree murder, enter a conviction for attempted second degree murder, and remand for resentencing on that charge.
REVERSED IN PART AND REMANDED; AFFIRMED IN PART; SENTENCES VACATED IN PART AND AMENDED IN PART AND AFFIRMED AS AMENDED.
BYRNES, J., dissents with reasons.
BYRNES, Judge, dissenting with reasons.
I respectfully dissent from the majority's reversal of convictions and sentences as to both defendants.

ANDERSON
With respect to Anderson, he was a principle to the offense of attempted first degree murder. Although Anderson was not the shooter, he and Bordenave continued to chase the victims when Bordenave shot the victim Lewis. Both defendants got into the station wagon and continued their pursuit after Bordenave fired the shots, showing that Anderson had the specific intent to kill when he aided and abetted Bordenave. There was evidence upon which any rational trier of fact could have found Anderson guilty of attempted first degree murder as well as armed robbery.
As to reference to other crimes, a mistrial was not mandated with respect to Anderson for references made to Anderson's aiming a gun, resisting arrest and carrying concealed weapons when he was pursued and finally arrested because the references are admissible as part of the conduct that constitutes an integral part of the act that is the subject of the present proceeding or res gestae under *1218 La.C.E. art. 404(B). Regardless of whether Anderson was also sought for an unrelated murder, reference to the flight at the time of the arrest for the charges in the present case is admissible to show Anderson's consciousness of guilt of the crimes he committed.

BORDENAVE
With respect to Bordenave, the evidence established that he had the specific intent to kill more than one person where he pursued Leon and Lewis after struggling and shooting at Lewis. Leon and Lewis were targets during the struggle, and when they tried to escape, both victims remained targets. There was evidence upon which any rational trier of fact could have found Bordenave guilty of attempted first degree murder and armed robbery.

EXCESSIVE SENTENCES
Although the majority states that the defendants' sentences are vacated so that review of the sentences need not be addressed, the majority notes that the trial court incorrectly denied parole eligibility for the attempted first degree murder convictions. The defendants did not raise the issue of excessive sentences on appeal so that the issue is not reviewable. Further, while the sentencing guidelines must be considered, the trial judge has discretion to impose sentences outside the range suggested if he states for the record adequate reasons for the sentence. La.C.Cr.P. art. 894.1. State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237; State v. Coleman, 94-0666 (La.App. 4 Cir. 12/15/94), 647 So.2d 1355, writ denied, 95-0145 (La. 5/19/95), 654 So.2d 1354.
At the sentencing hearing on March 23, 1993, the trial court stated:
Well, it's true he has no prior convictions that I can ascertain, but he doesand I'm talking about Kevin Andersonhave a lengthy record for a 22-year-old. And, of course, he has been in jail now sincethis rap sheet goes back to 11/16 of '91.
And, looking backwards on his rap sheet, as a juvenile he was arrested for theft, resisting an officer, theft, receiving stolen things, resisting an officer. Still as a juvenile, aggravated assault, another count of aggravated assault. Still a juvenile, simple burglary. Still as a juvenile, simple burglary. And still as a juvenile, criminal trespass, simple burglary, simple burglary, and there is something I can't figure out what it is, another one that's unspecified. Then still as a juvenile, another simple burglary, another simple burglary as a juvenile.
And then as an adult, armed robbery where the victim refused to prosecute, two counts. And then possession of cocaine, possession of heroin, possession of marijuana. And then in 1989, there was a Warrant issued for his arrest. And then also in 1990, 4/23/90, he was arrested for first degree murder during a crime, resisting an officer, possession of coca leaves. And I can't tell whether these overlap or not, but there is another first degree murder arrest where the witness refused to cooperate. And then, just a few days before this crime, November of '91, the defendant had another first degree murder. And I can't tell whether those overlap or not from the rap sheet that has been furnished me.
And then, of course, he has the crime for which he has been convicted, which is as to the first count, armed robbery, and as to the second count, attempted first degree murder.
I have considered the guidelines in this case, but the facts speak for themselves. This is a heinous crime that has been committed here. These two defendants wantonly accosted this young man in an attempt to steal his property. Then, when he didn't cooperate, actually chased him down, ultimately shooting him.
I feel that these defendants are equally culpable for their actions. While, of course, one defendant did the shooting, and the other one did not, I feel that they cooperated throughout the course of this event.
* * * * * *
As to Brian Bordenavelet's look at his record.
Mr. Bordenave goes back as a juvenile, 1991, illegal carrying a gun, criminal trespass, *1219 first degree murder during a crime, armed robbery, theft, resisting, obstructing an officer, theft, possession of a stolen auto, aggravated assault, illegal use of a weapon, possession of an unregistered firearm, resisting an officer, aggravated assault, a warrant from Jefferson Parish.
* * * * * *
I might add, as to both of these men, I deem them both to be a menace to the City, an absolute menace to society. And I can't think of any better place for both of them to be than in jail.
Let's finish up this.
There is an armed robberymaybe he forgot thatbut he was picked up for armed robbery and attempted firstand first degree murder.
* * * * * *
And then we go on. We have traffic violations, and then possession of a stolen auto, attempted first degree murder, flight from an officerand that is this case, and then the arrest in this case.
Same reasons for the last sentence. As I said, I don't see any reason to differentiate them. Neither one of these individuals should be entitled to be on our streets for many, many years. And I think what they did is horrendous, to actually try to steal from somebody, and then, when it fails, to chase them down, and after they have shot the individual, to actually take the property from them as they lay bleeding on the ground. Horrendous as far as this Court is concerned. I don't know why they are entitled to any type of consideration from this Court.
The prosecutor stated that Anderson also had a previous conviction, and the state would file a multiple bill against him.
At the multiple bill hearing for Kevin Anderson resulting from Anderson's earlier guilty plea to distribution of cocaine, on April 24, 1994 the trial court noted:
Also, I want to note for the record that the same reason[s] given for the original sentence apply here, and also I have considered the fact that this sentence could be constitutionally excessive and the Court finds that it is not considering the defendant's record and the nature of this charge for which he has been convicted.
The trial court did not abuse its discretion in sentencing the defendants.
The rulings of the trial court with respect to the convictions and sentences should not be overturned on appeal.
NOTES
[1] We reject the state's argument that defense counsel did not sufficiently articulate the basis of the motion for mistrial. The motion was based on the prosecutor's "reference to some guns ... to be used on the 95.1 [La.R.S. 14:95.1, with which Anderson was charged] that was severed and not on trial today," and the reference to Anderson's pointing a gun at Officer Watzke (counsel stated: "... and, two, he is not on trial for attempt murder of the police officer").
[2] Article 404(B)(1) substituted "conduct that constitutes an integral part of the act that is the subject of the present proceeding" for the phrase "res gestae." La.C.E. art. 404(B), comment (m).