11 THIBODEAUX, Judge.
Defendant, Brandy Wiley, along with Jason Pilcher, was charged by bill of indictment with two counts of first degree murder, violations of La.R.S. 14:30. The bill was amended, charging the defendant and Pilcher with two counts of second degree murder, violations of La.R.S. 14:30.1. Their trials were severed. On October |228, 1994, the jury returned verdicts of guilty on two counts of manslaughter. On December 21, 1994, defendant was sentenced to twenty-five years at hard labor on each count, to run consecutively.
Defendant now appeals her convictions and sentences, alleging insufficiency of evidence and excessiveness.
*186 We reverse her convictions. The evidence fails to demonstrate the requisite specific intent to support guilty verdicts.

FACTS

On' the night of August 17,1993, the defendant, fifteen years old at the time, and her fifteen year old companion, Jason Michael Pilcher, ran away from Pilcher’s home in Shreveport. They first met three days earlier. The two were planning to run away to Baton Rouge, Wiley’s former place of residence. Neither individual had any money, clothes or a vehicle. On the morning of August 18, 1993, Pilcher broke into a house in the Keithville area of Shreveport and stole a gun and some beer. The two left and stopped at another house. Pilcher entered the second house and exited with some soft drinks, another gun, and the keys to an automobile parked out front. The defendant entered the car with Pilcher and the two left the Shreveport area. Pilcher stopped the car at a convenience store where he proceeded to steal more soft drinks. The two proceeded to Natchitoches Parish, taking turns driving. Pilcher wrecked the vehicle and the pair started walking on foot. Wiley testified that Pilcher attempted to fire the weapon he had stolen in the second burglary. Apparently, it was unloaded and only clicked. He then asked her to carry it. She complied. Because she was tired and hungry, she told Pilcher she wanted to go home. She could not place a collect call to her grandfather’s residence (where her mother was living) because he had placed a “block” on the telephone which 13prevented such a call. Pilcher suggested that they call his brother in Shreveport to come out to get them.
They soon arrived at the home of Hal-lowese Lee. Ms. Lee would not open the door and refused their request for water and use of a telephone. Wiley and Pilcher continued to walk down the road and arrived at the residence of Phyllis Allbritton. Pilcher requested a telephone and Whey asked for water. Mrs. Allbritton handed a cordless phone to Pilcher and gave both individuals a glass of water. Wiley was standing next to Pilcher. As she was about to set her empty glass down, Wiley testified that Pilcher said “I’m going to kill them, I’m going to do it.”[1] Wiley said, “No.” Pilcher then shot Mrs. Allbritton in the forehead, then proceeded into the house where thirteen year old Amanda and eleven year old Justin Allbritton were located. Pilcher shot Justin in his room. Amanda escaped through the back door with Pilcher in hot pursuit. Although he fired several shots at her, she was unharmed. Wiley remained standing on the porch of the residence during this time.
Both Mrs. Allbritton and Justin died as a result of their wounds.
After abandoning his efforts to reach Amanda, Pilcher returned to the residence and retrieved the keys to the Allbritton’s truck after Wiley had refused his request to do so. Both fled the scene in the truck. Wiley threw the gun in her possession out of the truck’s window and disposed of Pilcher’s gun in the same manner after he threw it on her lap.
LThe truck was ditched about thirty five miles from the murder scene. Both Pilcher and Wiley fled through a wooded area and were found sleeping under trees the next morning.

ASSIGNMENT OF ERROR NO. 1

By this assignment of error, defendant contends the evidence was insufficient to support a verdict of guilty of two counts of manslaughter. Accordingly, the verdict is contrary to the law and evidence.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of *187 the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
Manslaughter is defined in part as a homicide committed, without any intent to cause death or great bodily harm, when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in La.R.S. 14:30 or 30.1, or of any intentional misdemeanor directly affecting the person. La.R.S. 14:31(A)(2)(a). A principal is any person concerned in the commission of a crime, whether present or absent, whether he directly commits the criminal act or aids and abets in its commission. La.R.S. 14:24. A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. La.R.S. 14:23; State v. Watson, 397 So.2d 1337 (La.1981).
^Defendant contends that her manslaughter convictions are not supported by the weight of the evidence and that, at best, she may be guilty of being an accessory after the fact. La.R.S. 14:25. Defendant argues that the record does not show she had any knowledge that Pilcher was going to harm or rob anyone; thus, there was no specific intent present on her part. Defendant also argues that if the state intended to prove that she was engaged in the perpetration or attempted perpetration of a felony not enumerated in La.R.S. 14:30 or 14:30.1, such as theft or robbery, the state should have proved that the defendant knew she was going to be involved. Defendant contends no such showing was made. We agree.
“Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La.R.S. 14:10(1). Although intent is a question of fact, it need not be proven as fact; instead, it may be inferred from the circumstances of the transaction. La.R.S. 15:445. “Specific criminal intent may be inferred from the circumstances present in the case and the actions of the defendant.”
The evidence fails to disclose any facts which directly links Wiley to the planning or commission of these murders. It is clear that she did not fire the shots which killed Mrs. Allbritton and Justin. No evidence was presented to demonstrate a prior discussion with Pilcher. What we do have is, at best, a circumstantial case. Can we justifiably draw an inference of specific intent from the factual circumstances as presented in this record? We do not think so. The record is insufficient to support such an inference.
Wiley ran away with Pilcher and committed some legal and moral acts of indiscretion while “on the run.” She was present at the time of the murders and absconded with Pilcher after he committed those dreadful crimes. However, the | eunrefuted testimony is that she wanted to go home on the same afternoon of the murders because she was tired, hungry, and thirsty. This testimony is corroborated by Wiley’s and Pilcher’s request to use the telephone at the Lee residence to contact Pilcher’s brother in Shreveport and further buttressed by their request to use the telephone at the Allbritton’s home for the ostensible purpose of securing transportation back to Shreveport. Furthermore, both Wiley’s voluntary statement and her trial testimony show an unequivocal response—“No”—when Pilcher said he was “going to do it.” Moreover, Whey refused to honor Pilcher’s request to get the keys to the Allbritton’s truck immediately after the murders. Admittedly, she left with Pilcher and got rid of the guns. These acts, as her counsel correctly observes, may form the basis for a valid accessory after the fact charge, but are insufficient as a matter of law to support a conviction for a specific intent homicide, such as manslaughter, under the circumstances of this case.
As State v. Pierre, 93-0301 (La. 2/4/94), 631 So.2d 427, 428 noted in reversing a manslaughter conviction which this court had affirmed:
*188 “All persons ‘concerned in the commission of a crime’ are principals, La.R.S. 14:24, but this rule has important qualifications. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Knowles, 392 So.2d 651 (La.1980). Mere presence at the scene is therefore not enough to ‘concern’ an individual in the crime. State v. Schwander, 345 So.2d 1173 (La.1977). Moreover, ‘an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.’ ” State v. Holmes, 388 So.2d 722, 726 (La.1980). (Emphasis added).
In other words, the state had to show more than Wiley’s direct or indirect involvement in the murder of Phyllis and Justin Allbritton. It had to show that Wiley specifically intended the deaths of these two individuals. See State v. Pierre at 428. It did not.
17Wiley cannot be convicted because of guilt by association. See State v. Schwan-der, 345 So.2d at 1175. Pilcher was indisputably guilty of the two murders. But, as we stated before, mere presence is not enough. Furthermore, “it is not enough to find merely that [Wiley’s] ... accomplice had the necessary mental state, since this intent cannot be inferred to the accused. It must be shown that this accused also had the specific intent to MU.” State v. Bordenave, 93-1682 (4 Cir. 8/23/95), 660 So.2d 1207, 1212. (Emphasis added).'

ASSIGNMENT OF ERROR NO. 2

This assignment deals with the excessiveness of Wiley’s sentences. It is made moot by our reversal of her convictions.

CONCLUSION

For the foregoing reasons, Brandy Wiley’s convictions for the manslaughter of Phyllis Allbritton and Justin AUbritton are reversed. Her convictions and sentences are vacated and set aside.
JUDGMENTS OF THE TRIAL COURT ARE REVERSED. CONVICTIONS AND SENTENCES VACATED AND SET ASIDE.
WOODARD, J., dissents.

. Wiley’s voluntary statement indicated that Pil-cher said only "I’m going to do it.” The state argues in its brief that this statement is evidence that Wiley and Pilcher discussed the homicides before they arrived at the Allbritton residence. During the trial, Wiley testified that she had not discussed shooting anyone and did not have any idea that Pilcher was going to shoot Mrs. Allbrit-ton and her son, Justin. She further testified that she was unaware that Justin had been killed until her incarceration.